IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF JACK CARMEL, by its Personal Representative, Gary Warlen, <br><br> Plaintiff, <br><br> v. <br><br> THE GIII ACCUMULATION TRUST and WELLS FARGO BANK, N.A., as Securities Intermediary, <br><br> Defendants. | C.A. No. 21-658-MN-JLH |

## REPORT AND RECOMMENDATION AND ORDER

WHEREAS, Plaintiff filed a complaint ("Complaint") in this Court on May 6, 2021, against Defendant The GIII Accumulation Trust ("GIII"), alleging that "GIII procured at least one policy on Mr. Carmel's life, including a $7 million dollar policy from Massachusetts Mutual Life Insurance Company (the 'Policy')," despite not having an insurable interest in Mr. Carmel's life, and subsequently collected upon the Policy (D.I. 1 ¶¶ 14-20);

WHEREAS, Plaintiff filed an amended complaint ("FAC") on May 21, 2021, joining Wells Fargo Bank, N.A. ("Wells Fargo") as a Defendant because of its alleged involvement as a securities intermediary with respect to the Policy;

WHEREAS, the FAC does not attach or refer to any agreement between Mr. Carmel and Defendant GIII or between Mr. Carmel and Defendant Wells Fargo;

WHEREAS, Defendants brought a motion to compel arbitration requesting the Court compel Plaintiff, the executor of the estate of Mr. Carmel, to arbitrate its claims against

Defendants, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, and to stay this action pending completion of such arbitration (D.I. 16);

WHEREAS, GIII attached to its motion a copy of a purported Beneficial Interest Purchase Agreement ("BIPA") "[b]y and among the Jack Carmel Family Trust . . . , Jack Carmel and GIII" bearing the signature of Jack Carmel and stating it was "duly executed and delivered" on October 12, 2006 (D.I. 18 ¶¶ 2-3, Ex. A);

WHEREAS, GIII submitted a declaration attesting that the document was an authentic copy of GIII's records, from Molly Ann Breffitt, an Assistant Vice President of Wells Fargo Bank, N.A., which in turn serves as Managing Trustee of GIII and signed the BIPA on GIII's behalf (D.I. 18 ¶¶ 1-3, Ex. A);

WHEREAS, Plaintiff has raised material questions about whether "the pages purporting to bear Mr. and Mrs. Carmel's signatures [were] taken from elsewhere and inserted into a much larger collection of papers [in Defendants' records] which . . . contain[] an alleged agreement to arbitrate," and has pointed to evidence of inconsistent footers, missing page numbers, and visibly different shading between the pages bearing the arbitration agreement and the signature pages; the absence of handwriting to fill conspicuous blanks throughout the document other than the signature pages; and evidence suggesting that an agency who facilitated the placement of Mr. Carmel's insurance requested insureds to sign separate signature pages that were later inserted into different agreements (D.I. 20 at 9; D.I. 18, Ex. A; D.I. 22, Ex. 1);

WHEREAS, the consideration of matters outside of the pleadings on a motion to compel arbitration requires the Court to review the motion under the standard for summary judgment under Fed. R. Civ. P. 56, *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 775 n.6 (3d Cir. 2013);

WHEREAS, the Third Circuit has held that, under these circumstances, "the motion to compel arbitration must be denied pending further development of the factual record" and has stated that "a 'restricted inquiry into factual issues' will be necessary to properly evaluate" the issues presented including "whether there was a meeting of the minds on the agreement to arbitrate, . . . and the non-movant 'must be given the opportunity to conduct limited discovery on'" at least "'the narrow issue concerning the validity' of the arbitration agreement," *Guidotti,* 716 F.3d. at 774 (internal citations omitted); *see also Estate of Berland v. Beverly Berland Insur. Trust*, No. 18-1493-MN, D.I. 29 (D. Del. May 17, 2019);

WHEREAS, the parties' briefs on the motion to compel arbitration raise additional issues, including whether Plaintiff is bound by the purported arbitration agreement, whether it applies to claims against Defendant Wells Fargo, and whether Plaintiff's claims against Defendants fall within the agreement's scope;

WHEREAS, some of those issues may need to be resolved before the Court compels arbitration and may implicate factual disputes;

WHEREAS, Plaintiff has filed a motion for leave to file a sur-reply (D.I. 24);

THEREFORE, IT IS RECOMMENDED this 14th day of January, 2022, that:

Defendant GIII's motion to compel arbitration (D.I. 16) should be DENIED, without prejudice to renew, in order to give the parties an opportunity to conduct limited discovery on the narrow factual issues relevant to at least the validity of the BIPA's arbitration clause in this case, and potentially its enforceability against Plaintiff, its applicability to the claims against Wells Fargo, and its scope.

IT IS HEREBY ORDERED that:

1. Defendants' motion to file under seal (D.I. 15) is GRANTED. However, Defendants must file a redacted version of the Declaration of Ms. Breffitt (D.I. 18) within seven days along with a declaration that includes a detailed explanation as to why disclosure of any proposed redacted material would work a defined and serious injury to Defendants. *See in re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 671-72 (3d Cir. 2019).

2. Plaintiff's motion to file a sur-reply (D.I. 24) is GRANTED.

3. On or before January 28, 2022, the parties shall meet and confer regarding how this case should proceed. At a minimum, the parties must discuss their respective positions on the following issues, including whether (i) the following issues must be resolved before the Court can determine whether to compel arbitration and (ii) the scope of any factual discovery that may be needed to resolve them:

   a) Whether Mr. Carmel agreed to arbitrate with GIII;

   b) Whether federal law, Delaware law, Florida law, or a combination thereof applies to each question of which non-signatory parties may invoke or be bound by any arbitration agreement between Mr. Carmel and GIII;

   c) Whether Mr. Warlen, as the personal representative of Mr. Carmel's estate but not a signatory of the purported BIPA, may be compelled (either by statute, equitable estoppel, or some other theory) to arbitrate claims against GIII under 18 Del. C. § 2704(b) or claims of unjust enrichment that survive to him by operation of 10 Del. § 3701;

   d) Whether Wells Fargo is entitled to invoke the benefit of any arbitration agreement between Mr. Carmel and GIII (either because it signed the purported BIPA on behalf of GIII; because of its relationship as GIII's trustee, securities intermediary, or agent; because Mr. Carmel would be compelled to arbitrate claims against Wells Fargo because of estoppel arising out of the alleged intertwining of Wells Fargo's actions and GIII's; or under some other theory) and whether Mr. Warlen's status as a non-signatory affects the outcome of that question;

   e) Whether Wells Fargo was a "payee" or "assignee" of the Policy within the meaning of 18 Del. C. § 2704(b) because it received a payment of benefits (even if it later paid benefits to another entity) and, if so, whether that creates an independent basis for Wells Fargo to be liable to Plaintiff and whether that affects the application of estoppel;

  f) Whether the BIPA shows a "clear and unmistakable" agreement to delegate questions about the arbitrability of claims like those asserted in this case to an arbitrator and whether Mr. Warlen or Wells Fargo, as non-signatories of the purported BIPA, are subject to any such agreement;

  g) If questions of arbitrability (*i.e.*, scope) are to be determined by the Court, whether Plaintiff's claims against the respective Defendants under 18 Del. C. § 2704(b) and for unjust enrichment "aris[e] under [the BIPA];" and

  h) Whether, if the Court determines that some claims are arbitrable but some are not, the Court should exercise its discretion to stay the remaining asserted claims.

  4. On or before February 4, 2022, the parties shall file a joint status report setting forth their agreement (or respective positions) on how this case should proceed, including their agreement (or respective positions) on the scope and timing of any limited discovery. The Court may thereafter order a teleconference.

Dated: January 14, 2022

                            Jennifer L. Hall
                            UNITED STATES MAGISTRATE JUDGE