IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF JACK CARMEL, by its Personal Representative, Gary Warlen, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 21-658 (MN) (JLH) ) |
| THE GIII ACCUMULATION TRUST and WELLS FARGO BANK, N.A., as Securities Intermediary, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM ORDER

At Wilmington this 31st day of March 2023:

As announced at the hearing on March 28, 2023, IT IS HEREBY ORDERED that the objections of the Estate of Jack Carmel ("Plaintiff" or "the Estate") (D.I. 56, 57) to Magistrate Judge Hall's Report and Recommendation ("the Report") are OVERRULED, the Report is ADOPTED, the renewed motion to compel arbitration (D.I. 46) is GRANTED and the action is STAYED pending the completion of the arbitration.

On June 30, 2022 and after limited discovery into whether Jack Carmel agreed to arbitrate with Defendant The GIII Accumulation Trust ("GIII"), Defendants filed a renewed motion to compel arbitration. (D.I. 46). Briefing on Defendants' motion was complete on September 7, 2022. (*See* D.I. 47, 48, 49 & 50). Judge Hall heard oral argument on November 10, 2022 (D.I. 59) and, on January 19, 2023, she issued the Report recommending Defendants' motion be granted and the case be stayed pending arbitration (D.I. 54). Plaintiff timely filed its objections (D.I. 56, 57) and Defendants responded (D.I. 58). The Court carefully reviewed the Report and all materials submitted in connection with Defendants' motion and

Plaintiff's objections, heard oral argument (D.I. 62) and applied the following legal standards in reaching its decision:

I. **LEGAL STANDARDS**

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms provided for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). "The [FAA] reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *see also Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (arbitration agreements "are enforceable to the same extent as other contracts"). "[U]pon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

When presented with an arbitration provision, this Court's task is to determine whether "a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of that agreement." *John Hancock Mut. Life Ins. Co. v. Glick*, 151 F.3d 132, 137 (3d Cir. 1998). The Third Circuit has explained the procedure for determining whether the parties formed an agreement to arbitrate as follows:

> Under our decision in *Guidotti*, when it is clear on the face of the complaint that a validly formed and enforceable arbitration

agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a Rule 12(b)(6) pleading standard "without discovery's delay." 716 F.3d at 776 (quotation marks and citation omitted). But if the complaint states a claim or the parties come forward with facts that put the formation of the arbitration agreement in issue, the court may authorize "limited discovery" to resolve that narrow issue for purposes of deciding whether to submit the matter to arbitration. *Id.* After discovery, the court may consider the question anew, using a summary judgment standard under Rule 56. *Id.* If a genuine issue of material fact remains, the court must proceed summarily to trial on "the making of the arbitration agreement." *Id.* (citing 9 U.S.C. § 4).

*MZM Constr. Co. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020).

## II. THE COURT'S RULING

The ruling on Plaintiff's objections to the Report was announced from the bench at the conclusion of the hearing as follows:

> Presently before me are objections of the Estate of Jack Carmel to Judge Hall's Report and Recommendation, which recommended granting Defendants' Renewed Motion to Compel Arbitration. I have reviewed the report, Plaintiff's objections and Defendants' response thereto, and I have considered *de novo* the objected-to portions of the Report and the relevant portions of the motion and supporting documentation, as well as the transcript of the November 10, 2022 hearing before Judge Hall. For the reasons set forth herein, Plaintiff's objections are overruled, the Report is adopted, the motion to compel arbitration is granted and the action is stayed pending the completion of the arbitration.
>
> I will not go into detail about the facts and procedural history, as the Report sets forth a recitation of facts and procedural history that no party has objected to and, finding no clear error, I adopt into my ruling. Additionally, I have previously set forth the legal standard for a motion to compel arbitration in *Dizon v. J.P. Morgan Chase*, No. 22-716 (MN)[1] and I have also reviewed the legal standard set forth in Judge Hall's Report, and I incorporate that law into my ruling today and I will also include it in an order I issue setting forth my ruling.

---

[1]  2023 WL 2456063, at *2 (D. Del. Mar. 10, 2023).

As an initial matter, I note that the parties had previously been fighting about whether Jack Carmel even agreed to arbitrate at all.  That is, there was some question as to whether he properly executed the Beneficial Interest Purchase Agreement,[2] which I will shorthand as the BIPA, and was therefore bound by it.

In the Report, Judge Hall examined the evidence and found that he did, especially in light of the fact that GIII produced an executed copy of the BIPA dated October 12, 2006 [that] was signed by Jack Carmel, as well as the Trust Officer for the Jack Carmel Family and a Wells Fargo Delaware Trust Company VP who signed on behalf of GIII.  Plaintiff does not object to the finding that Jack Carmel agreed to arbitrate disputes arising under the BIPA and I find no clear error in that finding.

Against this backdrop, Plaintiff's objections to the Report are focused on whether Carmel's agreement to arbitrat[e] can bind Carmel's estate and force arbitration in this § 2704(b) action.[3]  Although Plaintiff acknowledges the general rule that an estate usually stands in the shoes of the decedent for the decedent's claims,[4] Plaintiff argues that this rule is inapplicable here because the claim never belonged to the decedent and only accrued after Carmel's death.  In Plaintiff's view, because a claim under § 2704(b) seeking proceeds paid on a life insurance policy can only be brought *after* death, it is not possible for Carmel to have agreed to arbitrate this claim through the BIPA (or otherwise) in a way that is binding on the Estate.  I disagree.

Looking first at the relevant language in the contract, although the arbitration provision itself in Section 6.10 refers only to "the parties," the BIPA clearly provides in Section 6.7 that "[t]his Agreement is binding upon and will inure to the benefit of the parties and their respective successors and permitted assigns."  It's not disputable that the Estate is Carmel's successor.  Therefore, I think it is fair to say that the Estate is generally bound by the BIPA's agreement to arbitrate because Carmel, the Estate's predecessor, clearly agreed to the BIPA's terms.  I don't think anything in the BIPA itself provides any basis to find that Carmel's successors are bound only by some provisions – *e.g.*, ability to seek a remedy for a breach – and not others – *e.g.*, the arbitration requirement.  So the Estate is required to arbitrate disputes arising over the sale of

---

[2]   2023 WL 2456063, at *2 (D. Del. Mar. 10, 2023).

[3]   (D.I. 48, Ex. 1).

[4]   (*Id.* at 2).

Carmel's insurance policy. This is consistent with the general rule that an estate stands in the decedent's shoes and is bound by his or her prior agreements.

The Estate nevertheless argues that a claim under § 2704(b) is something of a unique creature and not one that Carmel could ever agree to arbitrate, particularly because he would be deceased at the time that claim arose. Stated differently, the Estate argues that it is the only one that has ever possessed the claim asserted here so no prior agreements can force it to arbitrate with anyone. In support of this argument, the Estate analogizes its § 2704(b) claim to a wrongful death claim. I find this argument unpersuasive for several reasons. First, § 2704(b) provides that "the individual insured or his or her executor or administrator, as the case may be" may maintain an action to recover benefits resulting from the death (or disability) of the insured. Section 2704(b) thus also provides that the insured can maintain an action to recover their own benefits in the case of disablement or injury. This language suggests that the right held by the Estate is derived from a right held by the insured – not a standalone right only belonging to the Estate. Moreover, this language stands in contrast to the Delaware wrongful death statute, which specifically provides individuals' family members with a direct claim.[5] I think this all supports a conclusion that the Estate is simply holding a right derived from Carmel and is therefore bound by his prior agreements.

Additionally, although no case has yet addressed this issue under the Delaware statute, the Southern District of Florida has addressed the question under the Florida statute that is largely the same as § 2704(b).[6] There, the Southern District of Florida found that the Estate was bound by the decedent's agreement to arbitrate disputes over a financing agreement for a STOLI policy, relying in part on the language providing that the contract was binding upon the parties "and their respective successors and permitted assigns" and also on the fact that an estate generally stands in the shoes of the decedent. The court found that the estate's STOLI claims bore a "significant relationship" to the financing agreement and also that the estate failed to support its position that it should not be bound by that agreement's arbitration provision. That is exactly the situation we have here. Indeed, the BIPA even has the very same language providing that the agreement is binding upon the parties' "respective

---

5   *See, e.g.*, 10 Del. C. § 3724(a, c) ("An action under this subchapter shall be for the benefit of the spouse, parent, child and siblings of the deceased person.").

6   *See Est. of Malkin by Guarnero v. Sail Funding Tr. II*, No. 15-62092, 2016 WL 8729959 (S.D. Fla. Feb. 2, 2016).

5

successors and permitted assigns." I think it is further support for the conclusion that the Estate is bound by the agreement to arbitrate and that this claim must be sent to arbitration.

Plaintiff's first objection to the Report is overruled and the Report is adopted as to requiring the Estate to pursue its § 2704(b) claim against GIII in arbitration.

Even if the Report is adopted as to compelling the Estate to arbitrate its claim against GIII, the Estate nevertheless argues that Wells Fargo cannot invoke the arbitration provision because it was not a signatory to the BIPA.[7] In the Estate's view, the Report allegedly concluded that "because Wells Fargo became GIII's agent in 2015, Wells Fargo was entitled to invoke the arbitration provision."[8] The Estate argues that Judge Hall refused to consider whether GIII acted with Wells Fargo's authority in 2006 when the BIPA was executed and, further, that she ignored the arbitration provision's language referring exclusively to "the parties." In essence, the Estate argues that Wells Fargo cannot invoke the arbitration provision because it purportedly had no involvement at the time the BIPA was executed and the BIPA does not allow assignment of rights without a signed writing. I don't agree with this characterization of Judge Hall's findings and I don't agree with Plaintiff's arguments.

As an initial matter, both before Judge Hall and now before me today, the Estate did not and does not dispute that Wells Fargo was – at some point – acting as GIII's agent with respect to the life insurance policy and, further, that Wells Fargo is being sued only in that capacity. Indeed, the Amended Complaint specifically provides that Wells Fargo is being sued in its capacity as the securities intermediary.[9] Relying on that, the Report found that non-signatory Wells Fargo is entitled to invoke the arbitration provision of the BIPA because it served as signatory GIII's agent – a conclusion that derives from the general principal under Delaware law that non-signatory agents may invoke arbitration agreements entered into by their principal.[10] The Estate objects to this finding on the basis that Wells Fargo was not acting as GIII's agent in 2006 when the BIPA was executed and therefore cannot enforce the

---

7    (D.I. 56 at 7-10).

8    (*Id.* at 8).

9    (D.I. 7 ¶ 3).

10    (D.I. 54 at 14).

arbitration agreement under agency principles. As Judge Hall noted in a footnote,[11] the Estate did not raise the issue of the timing of Wells Fargo's agency until oral argument and that argument is therefore considered waived. I agree with that. I am likewise unpersuaded by the merits, especially because Plaintiff again fails to offer any authority that says an agent cannot invoke an arbitration clause entered into by its principal unless it was serving as an agent at the time the relevant contract was entered. I think the Report got it right under the facts here and I will overrule the objections as to compelling arbitration with Wells Fargo.

[I]n sum, I will overrule Plaintiff's objections and adopt the Report. As such, Defendants' motion to compel arbitration is granted, including as to Wells Fargo, and the case will be stayed pending arbitration.

                                                          *Maryellen Noreika*
                                                          The Honorable Maryellen Noreika
                                                          United States District Judge

---

11      (D.I. 54 at 15 n.7).